**Not For Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **SEYFULDEEN AKDIL MUSLIM,** <br> **Plaintiff,** <br> **v.** <br> **DR. SYED RIZVI, et al.,** <br> **Defendants.** | : | **Civil Action No. 17-6036 (ES)** <br><br> **OPINION** |

SALAS, DISTRICT JUDGE

Plaintiff Sayfuldeen Akdil Muslim, ("Plaintiff"), a pre-trial detainee confined at Essex County Correctional Facility in Newark, New Jersey at the time of filing, brings this action *in forma pauperis*. Based on his affidavit of indigence, the Court previously granted Plaintiff's application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) and ordered the Clerk of the Court to file the Complaint. (D.E. No. 2).

At this time, the Court must review the Complaint (D.E. No. 1), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court will dismiss the Complaint in its entirety.

## I. BACKGROUND

Plaintiff brings this civil rights action, pursuant to 42 U.S.C. § 1983, against Defendants Dr. Syed Rizvi, Nurse April Lawrence, Nurse Shelly Benetez and the Center for Family Guidance.

The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of Plaintiff's allegations.

Plaintiff suffers from several health issues, including: brain hematoma, substance abuse, withdrawal alcohol abuse, major depressive disorder, chronic opioid dependence, stroke, adjustment disorder and Hepatitis-C. (D.E. No. 1, Complaint ("Compl.") 6). When he entered the jail, he requested that he start treatment for his Hepatitis, but to date that has not yet begun. (*Id.*).

Plaintiff states that on at least two occasions, Nurse Lawrence has "gone off shift" without checking to see if Plaintiff was okay or if his "I.V. had stopped." (*Id.* at 7). As a result, the I.V. became backed up with blood. (*Id.*). Plaintiff alleges that Nurse Benetez "exhibits a sense of concern for her patients, [but] it can be a bit over-whelming at times." (*Id.* at 8). Plaintiff alleges that Defendant Rizvi has sought and received medical advice from two hospitals for Plaintiff, but has yet to implement the treatment plan. (*Id.* at 10). Plaintiff alleges that on May 18, 2017, he was "called out" to court and left his wheelchair in his cell, but upon returning from court, it was gone and none of the staff knew anything about it. (*Id.* at 12). Plaintiff also alleges that his "PICC line" has previously cut into his skin and on another occasion, it "needed to be flushed." (*Id.* at 16). Finally, Plaintiff alleges that the "overseeing parent company," Center for Family Guidance, should be monitored and sanctioned for the ill treatment of the patients at the jail. (*Id.*).

Plaintiff is seeking monetary damages and that this Court "monitor this facility to ensure a safe and healthy treatment to all." (*Id.*).

## II. DISCUSSION

### A. Legal Standard

#### 1. Standards for a *Sua Sponte* Dismissal

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A because Plaintiff is a prisoner proceeding as indigent.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim[1], the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

[1] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 42 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

**2. Section 1983 Actions**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

**B. Analysis**

The Eighth Amendment prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes.[2] *Rhodes v. Chapman*, 452 U.S. 337, 344–46 (1981).

---

[2] Because it appears that Plaintiff was a pre-trial detainee at the time of the incidents, he would therefore be entitled to due process protections under the Fourteenth Amendment. *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003). Without deciding whether the Fourteenth Amendment provides greater protections, the Third Circuit has found it sufficient to apply the Eighth Amendment standard set forth in *Estelle v. Gamble*, 429 U.S. 97 (1976) when evaluating a claim for inadequate medical care by a detainee. *Banda v. Adams*, No. 16-1582,

This proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Id.* at 106.

To satisfy the first prong of the *Estelle* inquiry, the inmate must demonstrate that his medical needs are serious. Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for a doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

The second element of the *Estelle* test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. *Andrews v. Camden Cty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment. Implicit in this deference to prison medical authorities is the assumption that such

2017 WL 76943, at *2 (3d Cir. Jan. 9, 2017) (citing *Natale*, 318 F.3d at 581); *Edwards v. Northampton Cty.*, 663 F. App'x 132, 136 (3d Cir. 2016).

informed judgment has, in fact, been made." *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotations and citations omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. *Estelle*, 429 U.S. at 105–06; *White*, 897 F.2d at 110.

> Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest. Similarly, where 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care,' the deliberate indifference standard has been met.... Finally, deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment.

*Monmouth Cty. Corr. Inst. Inmates*, 834 F.2d at 346 (citations omitted).

Here, Plaintiff has failed to allege deliberate indifference on the part of any of the individual defendants. With regard to the two nurses, while Plaintiff has alleged that they have failed to adequately attend to his I.V.'s and "PICC line," he has failed to allege facts which suggest deliberate indifference on their part. At best, by his own admission, he has alleged a claim for medical malpractice/negligence. (*See* Compl. 7) ("This oversight of hers either purposefully or by accident . . . ."); *Farmer*, 511 U.S. at 837–38 (deliberate indifference is more than mere malpractice or negligence).

With regard to Dr. Rizvi, while Plaintiff has alluded to him failing to adhere to instructions by outside hospital specialists, which may suggest deliberate indifference on his part, Plaintiff has failed to provide sufficient facts under *Iqbal* to allow this claim to proceed. He states that Dr. Rizvi received the following treatment plan: Tylenol, Ultramadol, and Oxycodone; back brace to

be fitted for support; therapy; and surgery. (Compl. ¶ 4(b)). However, Plaintiff has not identified from whom Dr. Rizvi received this plan; what this plan was designed to treat; which of his ailments were left untreated; or what type of therapy and surgery was recommended. He refers to multiple occasions of I.V. medication and a PICC line, so he clearly received some treatment and, without more information, it is not clear what was lacking.

Later in the Complaint, he makes references to severe back pain, but again it is not clear whether he sought and was denied treatment for said pain, who denied his requests, when his requests were denied, etc. Plaintiff also alleges that Dr. Rizvi sought and received advice from both East Orange General Hospital and University Hospital about treatment for Plaintiff, but the requested advice has yet to be implemented. (Compl. 10). However, Plaintiff does not provide any further details, such as for which of Plaintiff's ailments Dr. Rizvi sought advice; what was the advice; how he has failed to adhere to the advice, etc. In short, based on the lack of information and confusing nature of the facts that are alleged, he does not provide sufficient details to support an Eighth Amendment claim against Dr. Rizvi at this time.

With regard to Center for Family Guidance, Plaintiff alleges only that as the overseeing parent company, it is "not innocent of the ill treatment of the patients." (Compl. 10). An employer or supervisor may not, however, be vicariously liable for violations of § 1983; instead, such liability typically requires some affirmative conduct by the supervisor. *Iqbal*, 556 U.S. at 675–76; *Bernard v. E. Stroudsburg Univ.*, 700 F. App'x 159, 163 (3d Cir. 2017); *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990). This doctrine also applies to state contractors like CFG: "To state a [§ 1983] claim against a private corporation providing medical services under contract with a state prison system, a plaintiff must allege a policy or custom that resulted in the alleged constitutional violations at

issue." *Palakovic*, 854 F.3d at 232; *see also Natale*, 318 F.3d at 583–84. Because Plaintiff's allegations against CFG are only based on their role as a parent company, and fail to identify any policy or custom that resulted in any alleged constitutional violations, this claim will also be dismissed.

## III. CONCLUSION

For the foregoing reasons, the Complaint will be dismissed without prejudice in its entirety pursuant to 28 U.S.C. §§ 1915 and 1915A for failure to state a claim upon which relief may be granted.[3] Because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies noted herein, the Court will grant Plaintiff leave to move to re-open this case and to file an amended complaint.[4] An appropriate Order follows.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**

---

[3] To the extent the Complaint raises claims under New Jersey state law, the Court declines to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3) (district courts may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claim's over which it has original jurisdiction).

[4] Plaintiff should note that when an amended complaint is filed, it supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading. *See West Run Student Housing Associates, LLC v. Huntington National Bank*, 712 F.3d 165, 171 (3d Cir. 2013)(collecting cases); *see also* 6 CHARLES ALAN WRIGHT ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1476 (3d ed. 2008). To avoid confusion, the safer practice is to submit an amended complaint that is complete in itself. *Id.*